# IN THE SUPREME COURT OF TEXAS

══════════

No. 11-0265

══════════

THE EPISCOPAL DIOCESE OF FORT WORTH, ET AL., PETITIONERS,

v.

THE EPISCOPAL CHURCH, ET AL., RESPONDENTS

══════════════════════════════════════════

ON DIRECT APPEAL FROM THE 141ST
DISTRICT COURT, TARRANT COUNTY, TEXAS

══════════════════════════════════════════


JUSTICE WILLETT, joined by JUSTICE LEHRMANN, JUSTICE BOYD and JUSTICE DEVINE, dissenting.

Until 1940, when Texans amended their constitution, the Supreme Court of Texas lacked any authority to decide direct appeals (i.e., appeals that leapfrog the court of appeals and pass directly to this Court). Four years later, the Legislature first exercised its new power to permit direct appeals, and in the sixty-nine years since, this Court has exercised that jurisdiction sparingly, only forty-three times. The reason is simply stated: Our direct-appeal jurisdiction is exceedingly narrow and only proper if the trial court granted or denied an injunction "on the ground of the constitutionality of a statute of this state."[1]

Today's direct appeal is directly unappealable. The trial court's order nowhere mentions any constitution or statute, much less the constitutionality of a statute. Indeed, the trial court stated

---

[1] TEX. GOV'T CODE § 22.001(c).

verbally that it was not pivoting on the constitutionality of state law. This dispute undoubtedly has a First Amendment overlay, but for a direct appeal, constitutionality must exist not just in the ether, but in the order.

As the trial court did not determine "the constitutionality of a statute of this state," its injunction could hardly be issued "on the ground of the constitutionality of a statute of this state." Accordingly, we lack jurisdiction. As I have underscored before (albeit, like today, in a dissent):

> Ultimately, it falls to us, the courts, to police our own jurisdiction. It is a responsibility rooted in renunciation, a refusal to exert power over disputes not properly before us. Rare is a government official who disclaims power, but liberties are often secured best by studied inaction rather than hurried action.[2]

The merits in this case are unquestionably important—and thankfully they are resolved today in a companion case[3]—but here the Court can only reach them by overreaching. We have no jurisdiction to decide this case as a direct appeal. I would dismiss for want of jurisdiction, and because the Court does otherwise, I respectfully dissent.

## I. Background

The trial court in this case issued two injunctions, requiring the defendants (now styling themselves as the Episcopal Diocese of Fort Worth):

1.   "to surrender all Diocesan property, as well as control of the Diocesan Corporation" to the Episcopal Church and other plaintiffs; and

2.   "to desist from holding themselves out as leaders of the Diocese."

---

[2] *In re Allcat Claims Serv., L.P.*, 356 S.W.3d 455, 474 (Tex. 2011) (Willett, J., concurring in part and dissenting in part).

[3] *Masterson v. Diocese of N.W. Tex.*, __ S.W.3d __ (Tex. 2013).

The court's reasons for granting the injunctions are laid out in paragraphs one through three of its order:

1. The Episcopal Church (the "Church") is a hierarchical church as a matter of law, and since its formation in 1983 the Episcopal Diocese of Fort Worth (the "Diocese") has been a constituent part of the Church. Because the Church is hierarchical, the Court follows Texas precedent governing hierarchical church property disputes, which holds that in the event of a dispute among its members, a constituent part of a hierarchical church consists of those individuals remaining loyal to the hierarchical church body. Under the law articulated by Texas courts, those are the individuals who remain entitled to the use and control of the church property.

2. As a further result of the principles set out by the Supreme Court in *Brown* and applied in Texas to hierarchical church property disputes since 1909, the Court also declares that, because The Episcopal Church is hierarchical, all property held by or for the Diocese may be used only for the mission of the Church, subject to the Church's Constitution and canons.

3. Applying those same cases and their recognition that a local faction of a hierarchical church may not avoid the local church's obligations to the larger church by amending corporate documents or otherwise invoking nonprofit corporations law, the Court further declares that the changes made by the Defendants to the articles and bylaws of the Diocesan Corporation are *ultra vires* and void.

(citations omitted).

There are no findings of fact or conclusions of law attached. The order does not mention the United States Constitution, the Texas Constitution, or any particular state statute. The only possible allusion to a statute is to "nonprofit corporations law," which the trial court found the defendants could not "invok[e]" to "avoid [their] obligations to the larger church." The trial court's legal support for this conclusion was a string citation to a number of cases, not a citation to any constitutional provision.

3

What is more, the defendants asked the trial court to amend the order to specify that the court had held a statute unconstitutional. The court declined to do so, orally stating that its ruling was based not on constitutionality, but rather on its application of *Brown v. Clark*[4]:

> I still can't just craft something to make it go to the Supreme Court. I mean, it – my understanding was that the – the trust laws that you were talking about don't apply in this situation because of *Brown*, not because they're not constitutional.

Our decision in *Brown* relied heavily on *Watson v. Jones*.[5] *Watson*, in turn, "appl[ied] not the Constitution but a 'broad and sound view of the relations of church and state under our system of laws.'"[6]

Nonetheless, the defendants filed a direct appeal. We noted probable jurisdiction and heard oral argument. But jurisdictional defects do not heal with age, no matter how novel, pressing, or consequential the issues at stake or how many judicial and party resources have been expended. The most fundamental restraint on judicial power is jurisdiction—our very authority to decide cases in the first place—and if we lack it, we lack it.

---

[4] 116 S.W. 360 (Tex. 1909).

[5] 80 U.S. 679 (1871).

[6] *Hosana-Tabor Evangelical Lutheran Church & Sch. v. E.E.O.C.*, __U.S.__, 132 S. Ct. 694, 704 (2012) (quoting *Watson*, 80 U.S. at 727).

## II. Discussion

### A. History of Direct Appellate Jurisdiction

A 1940 constitutional amendment gave the Legislature power to grant direct appeals to this Court.[7] Not until 1944, though, did the Legislature do so.[8] The original conferral allowed direct appeals from injunctions based on two grounds, either (1) the constitutionality or unconstitutionality of a state statute, or (2) the validity or invalidity of certain state administrative orders.[9] Today, the statutory grant of direct-appeal jurisdiction covers just one situation: "[A]n order of a trial court granting or denying an interlocutory or permanent injunction on the ground of the constitutionality of a statute of this state."[10]

I have found only forty-three cases where we have exercised direct-appeal jurisdiction. That is, while such jurisdiction has existed for nearly seventy years, we have exercised it stintingly. In twenty-four of the forty-three cases, our opinion made clear that the trial court either made a direct holding about a statute's constitutionality or issued declaratory relief that a statute was or was not

---

[7] *See R.R. Comm'n of Tex. v. Shell Oil Co.*, 206 S.W.2d 235, 238 (Tex. 1947).

[8] *Id.*

[9] *Id.*

[10] TEX. GOV'T CODE § 22.001(c). The Constitution still allows the Legislature to provide for direct appeal from injunctions based on the validity of administrative orders, however. TEX. CONST. art. V, § 3-b. But the express constitutional grant of direct-appeal jurisdiction in Article 5, Section 3-b of the Constitution is arguably now unnecessary given the broadened wording of the general jurisdictional provision in Article 5, Section 3. *See Perry v. Del Rio*, 67 S.W.3d 85, 98 n.4 (Tex. 2001) (Phillips, C.J., dissenting) ("Since 1981, the Court's appellate jurisdiction has extended to all civil cases 'as . . . provided . . . by law,' TEX. CONST. art. V, § 3, so that the Legislature could now provide for direct appeals without a specific constitutional grant of authority."). Accordingly, the Legislature has now provided for direct appeal from certain trial court rulings that involve Public Utility Commission financing orders. TEX. UTIL. CODE § 39.303(f).

constitutional.[11]   In eleven other cases, the trial court's order clearly must have been based on constitutional grounds, either because the opinion implies that only constitutional issues were raised to the trial court[12] or because the trial court granted an injunction enforcing a statute over constitutional objection, thus implicitly upholding the statute against constitutional attack.[13]   In two other cases, we summarily stated that the trial court granted or denied the injunction on the ground of a statute's constitutionality.[14]   But in at least six direct-appeal cases, we did not make it clear why

---

[11] *See Neeley v. West Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 753–54 (Tex. 2005); *State v. Hodges*, 92 S.W.3d 489, 493 (Tex. 2002); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000); *Owens Corning v. Carter*, 997 S.W.2d 560, 567–68 (Tex. 1999); *Maple Run at Austin Mun. Util. Dist. v. Monaghan*, 931 S.W.2d 941, 945 (Tex. 1996); *Barshop v. Medina Cnty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 623, 625 (Tex. 1996); *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 727 (Tex. 1995); *Richards v. League of United Latin Am. Citizens*, 868 S.W.2d 306, 308 (Tex. 1993); *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 442 (Tex. 1993); *Orange Cnty. v. Ware*, 819 S.W.2d 472, 473 (Tex. 1991); *O'Quinn v. State Bar of Tex.*, 763 S.W.2d 397, 398 (Tex. 1988); *LeCroy v. Hanlon*, 713 S.W.2d 335, 336 (Tex. 1986); *Wilson v. Galveston Cnty. Cent. Appraisal Dist.*, 713 S.W.2d 98, 99 (Tex. 1986); *Spring Branch Indep. Sch. Dist. v. Stamos*, 695 S.W.2d 556, 558 (Tex. 1985); *Shaw v. Phillips Crane & Rigging of San Antonio, Inc.*, 636 S.W.2d 186, 187 (Tex. 1982); *Gibson Distrib. Co. v. Downtown Dev. Ass'n of El Paso, Inc.*, 572 S.W.2d 334, 334 (Tex. 1978); *Tex. Antiquities Comm. v. Dallas Cnty. Cmty. Coll. Dist.*, 554 S.W.2d 924, 925–27 (Tex. 1977) (plurality opinion); *Smith v. Craddick*, 471 S.W.2d 375, 375–76 (Tex. 1971); *State v. Scott*, 460 S.W.2d 103, 105 (Tex. 1970); *State v. Spartan's Indus., Inc.*, 447 S.W.2d 407, 409 (Tex. 1969); *Jordan v. State Bd. of Ins.*, 334 S.W.2d 278, 278–80 (Tex. 1960); *Smith v. Decker*, 312 S.W.2d 632, 633 (Tex. 1958); *Rodriguez v. Gonzales*, 227 S.W.2d 791, 792–93 (Tex. 1950); *Dodgen v. Depuglio*, 209 S.W.2d 588, 591–92 (Tex. 1948).

[12] *See Conlen Grain & Mercantile, Inc. v. Tex. Grain Sorghum Producers Bd.*, 519 S.W.2d 620, 621–22 (Tex. 1975); *Robinson v. Hill*, 507 S.W.2d 521, 523 (Tex. 1974); *Itz v. Penick*, 493 S.W.2d 506, 508 (Tex. 1973); *Smith v. Davis*, 426 S.W.2d 827, 829 (Tex. 1968); *Shepherd v. San Jacinto Junior Coll. Dist.*, 363 S.W.2d 742, 742–43 (Tex. 1962); *King v. Carlton Indep. School Dist.*, 295 S.W.2d 408, 409 (Tex. 1956); *Dallas Cnty. Water Control & Improvement Dist. No. 3 v. City of Dallas*, 233 S.W.2d 291, 292 (Tex. 1950).

[13] *See Gibson Prods. Co. v. State*, 545 S.W.2d 128, 129 (Tex. 1976); *Dancetown, U.S.A., Inc. v. State*, 439 S.W.2d 333, 334 (Tex. 1969); *Schlichting v. Tex. State Bd. of Med. Exam'rs*, 310 S.W.2d 557, 558–59 (Tex. 1958); *H. Rouw Co. v. Tex. Citrus Comm'n*, 247 S.W.2d 231, 231–32 (Tex. 1952).

[14] *See State v. Project Principle, Inc.*, 724 S.W.2d 387, 389 (Tex. 1987); *Duncan v. Gabler*, 215 S.W.2d 155, 156–57 (Tex. 1948).

we thought the trial court's injunction was based on constitutional grounds.[15]  These cases address

jurisdiction rather cursorily, and only one of the opinions garnered a dissent on the jurisdictional

issue,[16] to which the majority opinion declined to respond.[17]

But in the vast majority of cases where we have exercised direct-appeal jurisdiction, it has

been abundantly clear that the trial court issued or denied an injunction on the ground of a statute's

constitutionality.

We have also issued at least eleven opinions in which we *dismissed* attempted direct appeals

for want of jurisdiction because the statutory test was not met.[18]  We have variously explained that

our direct-appeal jurisdiction "is a limited one,"[19] that we have been "strict in applying" or have

"strictly applied" direct-appeal jurisdictional requirements,[20] and that "[w]e have strictly construed

our direct appeal jurisdiction."[21]    Therefore, we have held that to meet the jurisdictional

---

[15] *See Del Rio*, 67 S.W.3d 85 (majority opinion); *Tex. Boll Weevil Eradication Found., Inc. v. Lewellen*, 952 S.W.2d 454 (Tex. 1997); *Carrollton-Farmers Branch Indep. Sch. Dist. v. Edgewood Indep. Sch. Dist.*, 826 S.W.2d 489 (Tex. 1992); *Ass'n of Tex. Prof'l Educators v. Kirby*, 788 S.W.2d 827 (Tex. 1990); *Parker v. Nobles*, 496 S.W.2d 921 (Tex. 1973); *Dobard v. State*, 233 S.W.2d 435 (Tex. 1950).

[16] *Del Rio*, 67 S.W.3d at 98–100 (Phillips, C.J., dissenting).

[17] *Id.* at 89, 95 (majority opinion).

[18] *See Tex. Workers' Comp. Comm'n v. Garcia*, 817 S.W.2d 60 (Tex. 1991); *Querner Truck Lines, Inc. v. State*, 652 S.W.2d 367, 368 (Tex. 1983); *Mitchell v. Purolator Sec., Inc.*, 515 S.W.2d 101 (Tex. 1974); *Holmes v. Steger*, 339 S.W.2d 663 (Tex. 1960); *Standard Sec. Serv. Corp. v. King*, 341 S.W.2d 423 (Tex. 1960); *Gardner v. R.R. Comm'n of Tex.*, 333 S.W.2d 585 (Tex. 1960); *Bryson v. High Plains Underground Water Conservation Dist. No. 1*, 297 S.W.2d 117 (Tex. 1956); *Corona v. Garrison*, 274 S.W.2d 541 (Tex. 1955); *Lipscomb v. Flaherty*, 264 S.W.2d 691 (Tex. 1954); *Boston v. Garrison*, 256 S.W.2d 67 (Tex. 1953); *McGraw v. Teichman*, 214 S.W.2d 282 (Tex. 1948).

[19] *Gardner*, 333 S.W.2d at 588.

[20] *Querner Truck*, 652 S.W.2d at 368; *Mitchell*, 515 S.W.2d at 103.

[21] *Garcia*, 817 S.W.2d at 61.

prerequisites, a trial court must actually "pass upon the constitutionality of [a] statute,"[22] "determin[e]" a statute's constitutionality,[23] or "base its decision" on constitutional grounds.[24] Indeed, "[i]t is not enough that a question of the constitutionality of a statute may have been raised in order for our direct appeal jurisdiction to attach in injunction cases; in addition the trial court must have made a holding on the question based *on the grounds* of the constitutionality or unconstitutionality of the statute."[25]

A close examination of the eleven cases where we dismissed for want of jurisdiction reveals strict adherence to the Legislature's restricted framework. For example, we held "no jurisdiction" where the trial court made the injunction decision based on res judicata[26] or where the trial court was directed to do so by a writ of prohibition by the court of civil appeals.[27] That is, because the trial court did not decide the merits of the constitutional issue, we lacked direct-appeal jurisdiction.[28] Similarly, we held that we did not have such jurisdiction where the trial court denied an injunction because the plaintiffs lacked "the necessary justiciable interest" to sue.[29] We even held that we lacked jurisdiction over a direct appeal of a temporary injunction involving a "serious question" of

---

[22] *Corona*, 274 S.W.2d at 541–42.

[23] *King*, 341 S.W.2d at 425; *Bryson*, 297 S.W.2d at 406.

[24] *Holmes*, 339 S.W.2d at 663–64.

[25] *Mitchell*, 515 S.W.2d at 103 (emphasis in original).

[26] *Lipscomb*, 264 S.W.2d at 691–92.

[27] *Gardner*, 333 S.W.2d at 589.

[28] *Corona*, 274 S.W.2d at 541–42.

[29] *Holmes*, 339 S.W.2d at 664.

8

the constitutionality of a statute, because the real purpose of the temporary injunction was merely to preserve the status quo, and the trial court did not make any holdings finally determining the constitutional issue.[30]

## B. Application

Given our long, consistent history of cautiously and narrowly construing our direct-appeal jurisdiction, the outcome of this case seems essentially predetermined: We lack jurisdiction. The Legislature allows parties to skip the court of appeals in one extraordinarily limited circumstance: where the trial court's injunction turned "on the ground of the constitutionality of a [state] statute."[31] The crux and rationale of the trial court's order is dispositive. Here, the trial court did not "pass upon the constitutionality of a statute,"[32] "determin[e]" a statute's constitutionality,[33] or "base its decision" on constitutional grounds.[34] While the constitutional issues may have been *raised* in the trial court, that alone is "not enough."[35]

At most, the trial court's order only vaguely alludes to nonprofit-related statutes, and there is certainly no indication in the order that the trial court was making a constitutional determination. The trial court order refers generally to nonprofit law and says the defendants cannot rely on this law

---

[30] *Mitchell*, 515 S.W.2d at 103–04.

[31] TEX. GOV'T CODE § 22.001(c).

[32] *Corona*, 274 S.W.2d at 541–42.

[33] *King*, 341 S.W.2d at 425; *Bryson*, 297 S.W.2d at 119.

[34] *Holmes*, 339 S.W.2d at 663–64.

[35] *Mitchell*, 515 S.W.2d at 103.

9

to escape the deference principle, providing a string citation as support. But only one of the cases in the string citation even refers to constitutional principles, and that case does not hold that only the deference approach is constitutional.[36] Moreover, that case was decided two years before the United States Supreme Court clarified in *Jones v. Wolf* that the "deference" rule is not mandated by the First Amendment.[37]

A diaphanous hint that a statute was viewed through a constitutional prism is not enough to justify exercising our "limited"[38] and "strictly construed"[39] direct-appeal jurisdiction. And here, the trial judge orally eschewed such a ruling, making it doubly clear that its order was not based on constitutional grounds. In light of *Jones* (that the deference approach is *not* constitutionally required) and the trial court's comments (that it was holding the statutes inapplicable but not unconstitutional), it seems an impressive stretch to transform the trial court's citation to an ambiguous pre-*Jones* case into a constitutional holding striking down state law.

Perhaps the order's silence and the judge's disavowal are beside the point if unconstitutionality was the inescapable basis for the trial court's ruling, as the majority concludes. Indeed, the defendants contend the order makes no sense unless it turned on a constitutional holding. As the defendants interpret the order, the trial court effectively held certain statutes unconstitutional if applied to local churches of hierarchical religions. In their Statement of Jurisdiction, the

---

[36] *See Presbytery of the Covenant v. First Presbyterian Church of Paris, Inc.*, 552 S.W.2d 865, 870–71 (Tex. Civ. App.—Texarkana 1977, no writ).

[37] 443 U.S. 595, 605 (1979).

[38] *Gardner*, 333 S.W.2d at 588.

[39] *Garcia*, 817 S.W.2d at 61.

10

defendants argue that a court can only reject statutes like this on "constitutional grounds." This assertion rests on the faulty premise that any time a court deems a statute inapplicable, it's because the statute would be unconstitutional if applied. Not true.

A court can refuse to apply a statute for various non-constitutional reasons. For example, if a statute purports to change long-standing common law, a court closely examines whether the Legislature truly intended to supplant the settled rule.[40] The trial court in this case may have applied (or misapplied) this kind of analysis, finding that pertinent statutes did not indicate legislative intent to abandon the common-law deference principle that we declared in *Brown*. Perhaps the trial court looked at a century of legislative inaction after *Brown* and took it as legislative acquiescence. There are other non-constitutional reasons to deem a statute ineffective, like the absurdity doctrine.[41] So even if a trial court implicitly invalidates a statute or finds it inapplicable, its reason for doing so is not necessarily because the Constitution demands it.

Thus, it cannot be true that by following *Brown v. Clark*, the trial court implicitly held that any statute that might apply under neutral principles is necessarily unconstitutional if applied to a church-property dispute in a hierarchical setting. This argument is foreclosed by *Jones v. Wolf*. If states are free, consistent with the First Amendment, to choose either approach, then choosing the deference test cannot equate to an implicit holding that applying statutes relevant under neutral

---

[40] *See Energy Serv. Co. of Bowie v. Superior Snubbing Servs., Inc.*, 236 S.W.3d 190, 194 (Tex. 2007) ("Of course, statutes can modify common law rules, but before we construe one to do so, we must look carefully to be sure that was what the Legislature intended.").

[41] *See, e.g.*, *TGS-NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011).

principles would be unconstitutional. Nobody can argue that Texas courts are *required* to adopt neutral principles—*Jones* precludes that argument.

Tellingly, the defendants do not attempt to analogize this case to any other in which the Court has exercised direct-appeal jurisdiction. None is comparable. No constitutional question was presented (or decided) in the trial court, and none is presented (or decided) here.[42]

Undoubtedly, we have already noted probable jurisdiction, heard argument on the merits, and committed substantial judicial resources to resolving the issues—to say nothing of the effort and cost expended by the parties. But to assert jurisdiction simply because it would be inconvenient to do otherwise betrays the deeply rooted constitutional principle that our jurisdiction is conferred ultimately from the People, directly through our Constitution and indirectly through our elected representatives.

Dismissing this case for want of jurisdiction would be sure to furrow brows, but there is no more principled reason to dismiss a case than to decide, even belatedly, that you lack the power to decide. Besides, and this is some consolation, the core merits issue presented—deciding which legal

---

[42] The Rules of Civil Procedure previously specified that we could not accept such jurisdiction unless the case presented a constitutional question to *this* Court. *Lipscomb*, 264 S.W.2d at 691–92, quotes the former rule (TEX. R. CIV. P. 499a(b)) as providing (emphasis added):

> An appeal to the Supreme Court directly from such a trial court may present only the constitutionality or unconstitutionality of a statute of this State, or the validity or invalidity of an administrative order issued by a state board or commission under a statute of this State, *when the same shall have arisen by reason of the order of a trial court granting or denying an interlocutory or permanent injunction*.

Accordingly, we said that one of the prerequisites for direct-appeal jurisdiction was that a constitutional "question is presented to this Court for decision." *Bryson*, 297 S.W.2d at 119. Admittedly, our Rules (which have since migrated to the Rules of Appellate Procedure) no longer specify that a direct appeal must present an actual constitutional question to this Court. TEX. R. APP. P. 57; *see also Del Rio*, 67 S.W.3d at 98–99 (Phillips, C.J., dissenting). But the Legislature's limited grant of such jurisdiction has not wavered, and we simply cannot accept a direct appeal unless a statute has been declared constitutional or unconstitutional. That did not happen here.

test should govern church-property disputes—is squarely resolved in today's companion case,[43] so a dismissal here would not unduly delay authoritative resolution or work any irreparable harm.

### III. Conclusion

Our characterizations of direct-appeal jurisdiction, something we have "strictly construed," are not ambiguous:

- "rare"

- "restricted"

- "very limited"

In light of this consistent clarity, the Court's exercise of jurisdiction has an unfortunate *ipse dixit* quality to it. The statutory test for direct-appeal jurisdiction is whether the trial court made its decision "on the ground of the constitutionality of a [state] statute." A statute, for example, must be invalidated, not just implicated. Direct-appeal jurisdiction is a rare (as it should be) short-circuiting of the usual rules, and I respectfully take exception to broadening the exception.

The power of judicial review—the authority to declare laws unconstitutional—is a genuinely stunning one, and one that judges exercise with surpassing trepidation. Given the stakes, it is difficult to imagine a judge striking down a legislative enactment stealthily, using gauzy language that requires reading between the lines. This judge certainly didn't believe he had declared anything unconstitutional, and he said as much—on the record and unequivocally.

---

[43] *Masterson*, __ S.W.3d __.

13

Today marks the second time this Court has stretched our direct-appeal jurisdiction beyond its statutory bounds.[44] The objective in both cases has apparently been to let the Court fast-forward to the merits of an important case. But an issue's importance and our commendable desire to resolve it swiftly does not give us license to enlarge our jurisdictional powers by fiat. In language that could have been written with today's case in mind, Chief Justice Phillips wrote in dissent over a decade ago:

> Dismissing a case on jurisdictional grounds may be frustrating to judges and litigants alike, particularly when issues of statewide import are involved . . . . However, the Legislature has chosen to make direct appeal an uncommon remedy, available only in rare and specific situations. Regardless of the day's exigencies, our highest and only duty is to respect the appropriate limits of our power . . . . I fear that our Court has allowed a hard case to make bad law today.[45]

The Court may come to rue its decision to assert direct-appeal jurisdiction in this case. Our rules seem to *mandate* our exercise of such jurisdiction in cases where a *permanent* injunction is based on the constitutionality of a statute (because our rules make direct-appeal jurisdiction discretionary only in *temporary* injunction cases).[46] Therefore, in addition to encroaching on the Legislature's constitutional prerogative to define our direct-appeal jurisdiction, the Court's decision may perversely *require* this Court to immediately hear all direct appeals of permanent injunctions that even vaguely implicate a statute's constitutionality.

---

[44] *See Del Rio*, 67 S.W.3d at 89 (majority opinion).

[45] *Id.* at 100 (Phillips, C.J., dissenting).

[46] *See* TEX. R. APP. P. 57.2.

I would dismiss this case for want of jurisdiction, and because the Court does otherwise, I respectfully dissent.

_____
Don R. Willett
Justice

**OPINION DELIVERED:** August 30, 2013